**Milo Petranovich**, OSB, #813376
petranovichm@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Tel: 503.778.2100

**Peter B. Morrison** (*pro hac vice*)
peter.morrison@skadden.com
**Virginia F. Milstead** (*pro hac vice*)
virginia.milstead@skadden.com
**Kasonni M. Scales** (*pro hac vice*)
kasonni.scales@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: 213.687.5000
Facsimile: 213.687.5600

Attorneys for Defendant LexinFintech Holdings Ltd.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **IN RE LEXINFINTECH HOLDINGS LTD. SECURITIES LITIGATION** | Case No.: 3:20-cv-01562-SI |
| | Defendant LexinFintech Holdings Ltd.'s **REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT** |
| | **REQUEST FOR ORAL ARGUMENT** |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(B) ...........................4

      A.    Plaintiff Does Not Allege Any Actionable Misstatement.......................................4

            1.    Plaintiff Fails To Allege A Misstatement Regarding Compliance
                  Or Reasons For Lexin's Growth.................................................................5

                  (a)    Plaintiff Fails To Allege Usury Or Harassment Sufficiently...........5

                  (b)    Lexin's Statements Were Not Misleading.....................................10

                  (c)    Lexin Disclosed Risks From Interest Rates And Debt
                         Collection..................................................................................14

            2.    Plaintiff Does Not Allege Lexin Falsely Reported Its Growth Rate .........16

            3.    Plaintiff Does Not Allege Any Misstatement Regarding Related-
                  Party Transactions..................................................................................19

                  (a)    Plaintiff Fails To Plead A Related-Party Transaction....................19

                  (b)    Plaintiff Fails To Allege Any Violation Of GAAP .......................21

            4.    Plaintiff Fails To Allege A Misstatement Regarding P2P Loans .............22

            5.    Plaintiff Fails To Allege A Misstatement Regarding Delinquency
                  Rates......................................................................................................23

      B.    Plaintiff Fails To Allege A Strong Inference Of Scienter....................................25

            1.    Plaintiff's Core Operations Theory And Individual Defendants'
                  Positions Fail To Plead Scienter ..............................................................25

            2.    Individual Defendants' Statements Raise No Inference Of Scienter .........27

            3.    Alleged GAAP Violations Do Not Demonstrate Scienter.......................29

            4.    Plaintiff Fails To Allege Motive And Opportunity.................................30

            5.    Viewed Holistically, Plaintiff's Allegations Fail To Raise An
                  Inference Of Scienter ..............................................................................31

      C.    Plaintiff Fails To Plead Loss Causation.............................................................31

III.  PLAINTIFF FAILS TO ALLEGE A 1933 ACT CLAIM.............................................33

PAGE i -    TABLE OF CONTENTS/AUTHORITIES

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

IV.     CONCLUSION ................................................................................................................35

PAGE ii -     TABLE OF CONTENTS/AUTHORITIES

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

## TABLE OF AUTHORITIES

Pages

### CASES

*3226701 Canada, Inc. v. Qualcomm, Inc.*,
No. 15cv2678-MMA (WVG),
2017 U.S. Dist. LEXIS 174367 (S.D. Cal. Oct. 20, 2017) ..................................................7

*In re Acadia Pharmaceuticals Inc. Securities Litigation*,
No.: 18-CV-01647-AJB-BGS,
2020 WL 2838686 (S.D. Cal. June 1, 2020).........................................................................5

*In re American Business Finalcial Services, Inc. Securities Litigation*,
413 F. Supp. 2d 378 (E.D. Pa. 2005) ............................................................................23, 24

*Applestein v. Medivation, Inc.*,
561 F. App'x 598 (9th Cir. 2014).........................................................................................8

*Asay v. Pinduoduo, Inc.*,
No. 18-cv-7625 (PKC),
2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) ...................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................22, 24

*In re AT&T/DirecTV Now Securities Litigation*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020).............................................................................5, 8

*Baker v. SeaWorld Entertainment, Inc.*,
No.: 14cv2129-MMA (KSC),
2016 WL 2993481 (S.D. Cal. Mar. 31, 2016) ...................................................................16

*In re Banc of California Securities Litigation*,
No. SACV 17-00118 AG (DFMx),
2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) ....................................................................18

*Berson v. Applied Signal Technology, Inc.*,
527 F.3d 982 (9th Cir. 2008) .............................................................................................16

*In re BofI Holding, Inc. Securities Litigation*,
977 F.3d 781 (9th Cir. 2020), *petition for cert. docketed*,
No. 20-1364 (U.S. Mar. 26, 2021)......................................................................1, 3, 31, 32

*Boston Retirement System v. Uber Technologies, Inc.*,
No. 19-cv-06361-RS, 2020 WL 4569846 (N.D. Cal. Aug. 7, 2020)...................................4

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

*Brody v. Transitional Hospitals Corp.*,
   280 F.3d 997 (9th Cir. 2002) ..................................................................................11, 13

*California Public Employees' Retirement System ("CalPERS")v. ANZ Securities, Inc.*,
   137 S. Ct. 2042 (2017)....................................................................................4, 34, 35

*In re China Valves Technology Securities Litigation*,
   No. 11 Civ. 0796(LAK),
   2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012).......................................................22

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
   No. 18-cv-04844-BLF,
   2019 WL 6877195 (N.D. Cal. Dec. 17, 2019).......................................................26

*Curry v. Yelp Inc.*,
   No. 14-cv-03547-JST,
   2015 WL 7454137 (N.D. Cal. Nov. 24, 2015),
   *aff'd*, 875 F.3d 1219 (9th Cir. 2017) .................................................................5, 6

*In re Daou Systems, Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ...............................................................................29

*Diaz v. Northern Dynasty Minerals Ltd.*,
   No. 17-CV-1241 PSG (SS),
   2018 WL 5099749 (C.D. Cal. Apr. 30, 2018) .......................................................25

*In re Diebold Nixdorf, Inc. Securities Litigation*,
   No. 19-CV-6180 (LAP),
   2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) .......................................................27

*ECA, Local 134 IBEW Joint Pension Trust  of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..............................................................................21, 22

*In re Facebook, Inc. Securities Litigation*,
   405 F. Supp. 3d 809 (N.D. Cal. 2019) ...................................................................11

*Flynn v. Sientra, Inc.*,
   No.: CV 15-07548 SJO (RAOx),
   2016 WL 3360676 (C.D. Cal. June 9, 2016) .........................................................16

*In re Francesca's Holdings Corp. Securities Litigation*,
   Nos. 13–cv–6882 (RJS), 13–cv–7804 (RJS),
   2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) .............................................20, 21, 22

*In re Fusion-io, Inc. Securities Litigation*,
   No.: 13–CV–05368–LHK,
   2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ............................................................9

PAGE iv -     TABLE OF CONTENTS/AUTHORITIES

*Harris v. AmTrust Financial Services, Inc.*,
       135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*,
       649 F. App'x 7 (2d Cir. 2016)......................................................................................33, 34

*Hatamian v. Advanced Micro Devices, Inc.*,
       87 F. Supp. 3d 1149 (N.D. Cal. 2015) .........................................................................28

*Ikeda v. Baidu, Inc.*,
       No. 20-CV-02768-LHK,
       2021 WL 1299046 (N.D. Cal. Apr. 7, 2021) ................................................................11

*In re Jiangbo Pharmaceuticals, Inc. Securities Litigation*,
       884 F. Supp. 2d 1243 (S.D. Fla. 2012), *aff'd sub nom.*
       *Brophy v. Jiangbo Pharmaceuticals, Inc.*,
       781 F.3d 1296 (11th Cir. 2015) ...................................................................................21

*Karam v. Corinthian Colleges, Inc.*,
       No. CV 10–6523–GHK (PJWx),
       2012 WL 8499135 (C.D. Cal. Aug. 20, 2012)....................................................11, 12, 17

*Kim v. Advanced Micro Devices, Inc.*,
       No. 5:18-cv-00321-EJD,
       2019 WL 2232545 (N.D. Cal. May 23, 2019) ................................................................15

*Lipton v. Pathogenesis Corp.*,
       284 F.3d 1027 (9th Cir. 2002) .....................................................................................28

*Lloyd v. CVB Financial Corp.*,
       811 F.3d 1200 (9th Cir. 2016) .....................................................................................29

*Mahapatra v. Truecar, Inc.*,
       No. CV 15-3979-R,
       2015 WL 12552062 (C.D. Cal. Dec. 9, 2015) ................................................................5

*Marcu v. Cheetah Mobile Inc.*,
       No. 18-CV-11184 (JMF),
       2020 WL 4016645 (S.D.N.Y. July 16, 2020) ..........................................................12, 16

*In re Marsh & McLennan Cos. Securities Litigation*,
       501 F. Supp. 2d 452 (S.D.N.Y. 2006)............................................................................13

*In re McKesson HBOC, Inc. Securities Litigation*,
       126 F. Supp. 2d 1248 (N.D. Cal. 2000) .........................................................................29

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

*Menora Mivtachim Insurance Ltd. v. International Flavors & Fragrances Inc.*,
No. 19 Civ. 7536 (NRB),
2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021),
*appeal filed sub nom. Jansen v. International Flavors & Frangrances Inc.*,
No. 21-1076 (2d Cir. Apr. 28, 2021) ...............................................................12

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................4, 24, 26, 30, 33

*Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)..............................................................18

*Mulquin v. Nektar Therapeutics*,
Case No. 18-cv-06607-HSG,
2020 WL 7773580 (N.D. Cal. Dec. 30, 2020),
*appeal filed sub nom. In re Oklahoma Firefighters Pension v. Nektar
Therapeutics*, No. 21-15170 (9th Cir. Jan. 29, 2021) ....................................3, 32

*NECA-IBEW Pension Trust Fund v. Bank of America Corp.*,
No. 10 Civ. 440(LAK)(HBP),
2012 WL 3191860 (S.D.N.Y. 2012)..................................................................24

*In re Netflix, Inc. Securities Litigation*,
No. C04-2978 FMS,
2005 WL 1562858 (N.D. Cal. June 28, 2005)..................................................1, 6

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v.
America West Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ...........................................................................30

*Nurlybayev v. ZTO Express (Cayman) Inc.*,
No. 17 CV 6130-LTS-SN,
2021 WL 1226865 (S.D.N.Y. Mar. 31, 2021) ..................................................16

*In re NVIDIA Corp. Securities Litigation*,
768 F.3d 1046 (9th Cir. 2014) .....................................................................26, 27

*Oklahoma Police Pension & Retirement System v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019)......................................................................16

*In re Petrobras Securities Litigation*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015)...............................................................35

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ...............................................................8, 26, 27, 28

PAGE vi -    TABLE OF CONTENTS/AUTHORITIES

*In re Qudian Inc. Securities Litigation*,
    No. 17-CV-9741 (JMF),
    2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019)............................................................9, 14

*Reed v. Amira Nature Foods Ltd.*,
    No. CV 15–0957 FMO (PJWx),
    2016 WL 6571281 (C.D. Cal. July 18, 2016)...................................................................20

*In re Refco, Inc. Securities Litigation*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007).............................................................................27

*Retail Wholesale & Department Store Union Local 338 Retirement Fund v.*
    *Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ........................................................................................4

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
    697 F.3d 869 (9th Cir. 2012) ...................................................................................30, 31

*Robb v. Fitbit Inc.*,
    216 F. Supp. 3d 1017 (N.D. Cal. 2016) ...........................................................................7

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .............................................................................9, 12, 17

*Rubke v. Capitol Bancorp, Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) .......................................................................................34

*In re Sandridge Energy, Inc.*,
    No. CIV-13-102-W,
    2013 WL 12094274 (W.D. Okla. Sept. 11, 2013) ...........................................................21

*Schneider v. California Department of Corrections*,
    151 F.3d 1194 (9th Cir. 1998) ..................................................................................28, 32

*Schueneman v. Arena Pharmaceuticals, Inc.*,
    840 F.3d 698 (9th Cir. 2016) .........................................................................................13

*ScripsAmerica, Inc. v. Ironbridge Global LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) .........................................................................6, 8

*In re SemGroup Energy Partners, L.P.*,
    729 F. Supp. 2d 1276 (N.D. Okla. 2010).........................................................................29

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) ..........................................................................28

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

*In re Silicon Graphics Inc. Securities Litigation*,
    183 F.3d 970 (9th Cir. 1999), *abrogated on other grounds as recognized by South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 484 (9th Cir. 2008) ........................................7

*Snellink v. Gulf Resources, Inc.*,
    870 F. Supp. 2d 930 (C.D. Cal. 2012) ...............................................................18

*Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) .............................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................31

*Turocy v. El Pollo Loco Holdings, Inc.*,
    No. SACV 15-1343-DOC (KESx),
    2017 WL 3328543 (C.D. Cal. Aug. 4, 2017)....................................................28

*Utesch v. Lannett Co.*,
    385 F. Supp. 3d 408 (E.D. Pa. 2019) ................................................................28

*In re Vantive Corp. Securities Litigation*,
    283 F.3d 1079 (9th Cir. 2002) .............................................................17, 19, 23

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ..............................................................11

*In re Violin Memory Securities Litigation*,
    No.: 13–CV–5486 YGR,
    2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)...................................................15

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ........................................................................3, 31

*Wilson v. MicroFinancial, Inc.*,
    Civ. A. No. 03–11883–RGS,
    2006 WL 1650971 (D. Mass. June 13, 2006)...................................................10

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................... passim

*In re Zynga Inc. Securities Litigation*,
    No. C 12–04007 JSW,
    2015 WL 1382217 (N.D. Cal. Mar. 25, 2015)...................................................29

**STATUTES**

15 U.S.C. § 77m..............................................................................................34

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

**REGULATIONS**

17 C.F.R. § 229.404(a)..................................................................................................... 19, 21

PAGE ix -　　TABLE OF CONTENTS/AUTHORITIES

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

## I.    PRELIMINARY STATEMENT[1]

Plaintiff's Opposition cannot—and did not—cure the fatal deficiencies in his AC, which originated from, and depends entirely on, a short-seller report authored by anonymous persons. As the Ninth Circuit has recently concluded, a "reasonable investor reading" such a report "would likely have taken [its] contents with a healthy grain of salt" as it was authored by those with a "financial incentive to convince others to sell." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020). Given this holding, Plaintiff's Opposition only highlights the futility of basing an entire lawsuit on a short-seller's self-serving machinations, which were themselves lacking in specifics or support, and which inaccurately predicted that Lexin was "set to collapse" and stated that its "target price is ZERO." (Ex. 1 at 1.) The allegations cut and pasted from the report are insufficient to meet the heightened pleading standards that the Private Securities Litigation Reform Act (the "PSLRA") requires.

*First*, in his Opposition, Plaintiff argues that the four anonymous internet complaints he lifted from the Grizzly Report suffice to allege that Lexin engaged in usury and harassment and that Lexin misstated its efforts at regulatory compliance and drivers of its growth. Plaintiff contends that these concededly limited complaints were merely "examples" of these practices, and that Plaintiff is not required to provide the "entire universe" of examples. But Plaintiff alleges nothing to show that *any* examples beyond the four he lifted from the Grizzly Report—or any other facts supporting that Lexin engaged in usury or harassment—even exist. And courts have repeatedly rejected attempts to allege a policy or practice of conduct based on isolated examples. *See In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *7 (N.D. Cal. June 28, 2005) ("every large

---

[1] Defendants adopt the same defined terms and abbreviations used in their Motion to Dismiss the Amended Class Action Complaint ("Motion" or "Mot."). Further, all emphases are added, and internal quotes and citations omitted unless otherwise stated.

PAGE 1 -     REPLY IN SUPPORT OF MOTION TO DISMISS

company can expect to have some customer complaints, and the existence of such complaints fails to render Netflix's statement about its service false"). In any case, as set forth below, Plaintiff failed to establish that the four complaints are sufficiently reliable and detailed for the Court to credit them. See *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).

The other categories of false or misleading statements the AC attempts to allege also come up short. In particular, among other reasons:

- Plaintiff argues that Lexin misstated its growth in users because "web traffic" to or about an unspecified website "remained relatively flat" (Opp. 21), but the AC alleges no facts— and the Opposition offers no explanation—as to why "web traffic" should correlate with the number of people using a mobile application downloaded from a third party app store.

- Plaintiff argues that Lexin failed to disclose related-party transactions, but his barebones allegations fail to show that Lexin was even a party to these alleged transactions, or that the transactions were material. (Opp. 24.)

- Plaintiff argues that Lexin continued to offer new P2P loans after it stated it quit doing so, but Plaintiff offers only one example, again without alleging any details about it. (Opp. 25-26.) Plaintiff also has no answer to Lexin's explanations that this example fails to show a *new* P2P loan. (Opp. 25-26.)

- Plaintiff argues that Lexin understated its post-pandemic delinquencies because they were not as high as they should have been compared to "traditional banks" (Opp. 26), but the AC includes no specifics about how Lexin's delinquencies compared to traditional banks pre-pandemic, a period that makes up the bulk of the Class Period.

*Second*, the allegations to which Plaintiff points in his Opposition fail to raise a strong inference that any Individual Defendant acted with scienter. (Opp. 27-31.) Taken collectively, Plaintiff's argument amounts to the contention that because Individual Defendants are "leaders of the Company" "focused on" "delinquency rates" or "regulatory compliance," they *must have* become aware of information contradicting their statements. This falls far short of the stringent standards for pleading scienter under the PSLRA. Indeed, the Ninth Circuit has repeatedly rejected scienter theories based on claims the defendant *must have* known its statements were false, absent allegations that the "information [showing falsity] was obvious from the operations of the

PAGE 2 -     REPLY IN SUPPORT OF MOTION TO DISMISS

company." *See Zucco*, 552 F.3d at 1001. Plaintiff identifies no "obvious" information here, and pleads no specific facts to show that any Defendant knew anything about the alleged internet complaints, web traffic, related party transactions, or particular loan transactions that Plaintiff uses to support his claims. Coupled with Plaintiff's failure to allege that any Defendant had any *reason* to commit fraud, Plaintiff's claim fails. *See Webb v. SolarCity Corp.*, 884 F.3d 844, 855-56 (9th Cir. 2018) (holding that non-particularized allegations of confidential witness statements, motive, GAAP violations, SOX certifications, and "core operations inference" collectively did not raise a strong inference of scienter).

*Third*, Plaintiff fails to allege loss causation. The decision in *BofI*, 977 F.3d at 797, is dispositive: when an anonymous short-seller issues a report laden with disclaimers, the market knows better than to credit that report as revealing the "truth" about a company. Plaintiff claims that the Grizzly Report is not anonymous because it came from "Grizzly Research," but Plaintiff ignores that no individual stood behind it or took ownership of it. *See Mulquin v. Nektar Therapeutics*, 2020 WL 7773580, at *14-15 (N.D. Cal. Dec. 30, 2020) (treating report from "Plainview" as an anonymous report that did not constitute a corrective disclosure under *BofI*). Plaintiff also picks out a portion of the disclaimer in the Grizzly Report where it claims that "to the best of our ability and belief," its sources are "accurate and reliable." (Opp. 22.) But, like the blog posts in *BofI*, the Grizzly Report refused to make any representation as to the "accuracy or completeness" of its information, *BofI*, 977 F.3d at 797, and Plaintiff has not explained why the tepid "best of our ability and belief" statement would cause the market to credit the Grizzly Report any more than it would the posts in *BofI*.

*Finally*, Plaintiff fails to state a claim under Section 11 for two independent reasons—the statute of repose bars his claim, and he fails to allege any misstatement in the Offering Materials.

PAGE 3 -    REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff asserts that because a now-dismissed complaint filed in federal court in New Jersey and his Lead Plaintiff Motion addressed both the § 10(b) and § 11 claims, his § 11 claim was brought within the statute of repose. But Plaintiff cannot, as a matter of law, rely on another plaintiff's complaint or his Lead Plaintiff motion to circumvent the bar on Section 11 liability. *See CalPERS v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2054 (2017) (rejecting argument that shareholder's claim was timely because another shareholder asserted it in an earlier class action). Further, the AC and Opposition do not identify any undisclosed information that took place before Lexin's December 21, 2017 IPO and rendered Lexin's statements misleading. For these and the reasons stated below and in the Motion, the Court should dismiss the AC.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(B)

As shown in the Motion, Plaintiff fails to allege, as he must, (i) a false or misleading statement; (ii) scienter; and (iii) loss causation. Plaintiff's Opposition fails to cure any of the defects Lexin identified in the Motion.

### A.    Plaintiff Does Not Allege Any Actionable Misstatement

As Lexin established in its Motion, "[t]he PSLRA has exacting requirements for pleading 'falsity.'" *Metzler*, 540 F.3d at 1070. Plaintiff must both "allege a misrepresentation or a misleading omission with particularity and explain why it is misleading." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017). As the Opposition confirms, the AC falls far short of this standard.[2]

---

[2] It is not clear from the Opposition or the AC which particular statements the AC is challenging. This lack of clarity is the result of Plaintiff's use of "puzzle pleading"—quoting Lexin's disclosures without identifying the particular language Plaintiff contends is fraudulent or why. (Mot. 10 n.3; *see also, e.g.*, AC ¶¶ 52-54, 59, 63-64.) Thus, Plaintiff's argument that his AC is "carefully organized" (Opp. 17 n.4) misses the point—the problem is not organization or readability; it is the basic failure to make clear what statements Plaintiff is challenging. The complaints in the cases Plaintiff cites did not suffer from this fatal defect. *See Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *5 (N.D. Cal. Aug. 7, 2020) (plaintiff has placed "emphasis" on the portions of
*(cont'd)*

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

### 1.    Plaintiff Fails To Allege A Misstatement Regarding Compliance Or Reasons For Lexin's Growth

Plaintiff argues that Lexin's general statements about regulatory compliance and drivers of its growth were misleading because they failed to disclose purported usury and harassment of borrowers. (Opp. 18.) Plaintiff argues that, because Lexin discussed compliance and certain drivers of its growth in general terms, it undertook a duty to reveal its alleged usurious lending and harassment, which Plaintiff speculates somehow raised regulatory risk or contributed to Lexin's growth. (*Id.*) This claim fails.

### (a)    Plaintiff Fails To Allege Usury Or Harassment Sufficiently

First, Plaintiff has failed to allege any policy or practice at Lexin of engaging in usury or harassment through debt collection, let alone practices extensive enough to raise its risk profile or drive Lexin's growth (assuming that overcharging and harassing customers could lead to growth in the first place). Instead, Plaintiff relies exclusively on four anonymous, internet complaints that were not even made directly to Lexin. (AC ¶¶ 42-43; Mot. 14-17.) Courts, however, have repeatedly rejected attempts to plead falsity based entirely on anecdotal customer complaints because these unsubstantiated complaints do not establish a pattern of conduct sufficient to render the defendant's statements false. *See, e.g.*, *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 527 (S.D.N.Y. 2020) ("Courts have generally held that failure to disclose anecdotal incidents of improper sales tactics or other isolated employee misconduct is not material." (collecting cases)); *Mahapatra v. Truecar, Inc.*, 2015 WL 12552062, at *1 (C.D. Cal. Dec. 9, 2015) (concluding that "the mere existence of consumer complaints does not establish that TrueCar misrepresented that it guaranteed prices to customers"); *Curry v. Yelp Inc.*, 2015 WL 7454137, at

---

the registration statement it alleged were misleading); *In re Acadia Pharm. Inc. Sec. Litig.*, 2020 WL 2838686, at *4 (S.D. Cal. June 1, 2020) (complaint contained block quotes but did "single out the actual statements that are the basis of" the plaintiff's claim).

PAGE 5 -    REPLY IN SUPPORT OF MOTION TO DISMISS

*1, *7 (N.D. Cal. Nov. 24, 2015) (stating "a dozen relevant but unsubstantiated and divergent consumer complaints over at least five years does not establish a pattern of conduct"); *Netflix*, 2005 WL 1562858, at *7 ("every large company can expect to have some customer complaints, and the existence of such complaints fails to render Netflix's statements about its service false").

Plaintiff's attempts to distinguish *Netflix* and *Yelp* on the ground that the consumer complaints in those cases were "subjective opinions" or "based on inferences," while the consumer complaints Plaintiff cites are "concrete examples of objective facts," fail. (Opp. 19.) In fact, the purported complaints here are filled with subjective opinions concerning what the writers "believe" to be usury and "aggressive" collection practices. (AC ¶¶ 42-43.) But regardless, Plaintiff's attempted distinction does not withstand scrutiny. In *Netflix*, the court did not characterize the customer complaints as subjective opinions, let alone reject those complaints *because* they were subjective. *Netflix*, 2005 WL 1562858, at *7. Likewise, in *Yelp*, the court held the plaintiff "must show more than the mere existence of a few customer complaints per year to adequately plead" falsity as to the authenticity of the reviews on its site. *Yelp*, 2015 WL 7454137, at *7. The court rejected the allegations even when the customer complained that a Yelp representative told them Yelp manipulated reviews for a fee. *Id.* at *1. Thus, the court did not rest its decision on the nature of the complaints, but on Plaintiffs' failure to show, from the mere existence of isolated consumer complaints, the alleged company policy or practice. *Id.* at *7.

Plaintiff argues the customer complaints are merely "examples" and not "the entire universe of instances" where Lexin charged usurious rates to customers. (Opp. 18.) However, no facts in the AC support that *any* usury or harassment occurred beyond the instances asserted in the four internet complaints. *See ScripsAmerica, Inc. v. Ironbridge Global LLC*, 119 F. Supp. 3d 1213, 1262 (C.D. Cal. 2015) (rejecting allegations when plaintiff cited "only one example of this

PAGE 6 -     REPLY IN SUPPORT OF MOTION TO DISMISS

[misconduct], and its reference to 31 other examples is unsupported and conclusory"). If Plaintiff is aware of additional facts, he must allege them, not ask the Court to assume that they exist. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) ("It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate her claim.").

Nor does Plaintiff cite any law where "examples" of alleged conduct were sufficient to establish falsity. Even Plaintiff's own cases (Opp. 19) hold that falsity cannot be based *solely* on anecdotal complaints. *See 3226701 Can., Inc. v. Qualcomm, Inc.*, 2017 U.S. Dist. LEXIS 174367, at *69-70 (S.D. Cal. Oct. 20, 2017) (plaintiff supported its allegations with "several confidential witnesses, media sources' reports, and [a client's] pattern of using [a particular product]" and that "each of these reasons on its own might be insufficient to support the allegation"); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1029 (N.D. Cal. 2016) ("This is not a case in which the plaintiffs rely on consumer complaints on their own to establish the veracity of the allegations." "Relying on multiple and varying sources, plaintiffs allege that the devices could not do [what Fitbit said it could].").

In any event, the Ninth Circuit disregards allegations from anonymous sources when the plaintiff fails to describe the sources with "sufficient particularity to establish their reliability and personal knowledge." *Zucco*, 552 F.3d at 995. As shown in the Motion, Plaintiff fails to provide *any* information about the anonymous internet complainants whose statements Plaintiff adopts, let alone sufficient information to assure the Court that the sources are reliable. (Mot. 15.) Plaintiff argues that he need not provide any information about the complainants themselves because the complaints "came directly from customers charged those usurious rates." (Opp. 20.) But while the complaints might *purport* to be from customers, Plaintiff pleads no "corroborative" facts in

PAGE 7 -    REPLY IN SUPPORT OF MOTION TO DISMISS

support. *See Zucco*, 552 F.3d at 995 (looking at "level of detail," "corroborative" facts, "coherence and plausibility" and other indicia of reliability). For all anyone knows, given the nature of anonymous internet posts, the complaints could have been fabricated by a Lexin competitor or a short seller like Grizzly Research, or come from a disgruntled, dishonest, or confused person. Indeed, the AC does not even describe the nature of the website on which the complaints were posted or what steps, if any, that site takes to authenticate complaints, and the complaints have since been taken down from those sites.[3] For precisely these reasons, courts require a plaintiff to identify anonymous internet posters sufficiently to establish their reliability. *See AT&T/DirecTV*, 480 F. Supp. 3d at 520 n.9 (rejecting plaintiff's reliance on "anonymous comments posted on www.reddit.com and other internet forums" because "[n]one of those posters appears to be known to [p]laintiffs, and the bases for their claims cannot be ascertained"); *ScripsAmerica*, 119 F. Supp. 3d at 1261 (concluding that "anonymous internet postings" are subject to the same standard as "confidential witness statements" and rejecting allegations when plaintiff failed to allege "facts that support an inference that the internet posters it cites are reliable").[4]

Moreover, as demonstrated in the Motion, the complaints themselves are lacking in specificity, based on hearsay, or speculative. (Mot 15); *see also Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (rejecting "unsubstantiated statement[s], without substance or context" from confidential witness). Concerning the first

---

[3] *See* https://ts.21cn.com/tousu/show/id/2305472; https://ts.21cn.com/tousu/show/id/2306531; https://ts.21cn.com/tousu/show/id/2339816; https://ts.21cn.com/tousu/show/id/2305293.

[4] Plaintiff suggests that the standard for sufficiently identifying anonymous sources does not apply here because the court in *Zucco* discusses confidential witnesses to establish scienter as opposed to falsity. (Opp. 19.) However, courts within the Ninth Circuit apply the same test to confidential witness statements in the context of scienter *or* falsity. *See, e.g.*, *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) (concluding that plaintiffs failed to adequately allege falsity with allegations based on "uncredited and speculative conclusions" from confidential witnesses).

PAGE 8 -     REPLY IN SUPPORT OF MOTION TO DISMISS

complaint, Plaintiff argues that the complainant "explains *precisely* how Lexin charged it a usurious rate." (Opp. 20 (emphasis in original).) However, Plaintiff ignores the arguments in Lexin's Motion as to why that purported explanation is anything but precise—the complainant appears to be combining interest charged on multiple loans. (Mot. 16; AC ¶ 42.) The complainant and, by extension, Plaintiff thus fail to establish that Lexin actually charged a usurious rate on any single loan. *See In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18-20 (N.D. Cal. Feb. 12, 2015) (rejecting confidential witness allegations that did not contradict company's statements).

Concerning the second complaint, Plaintiff ignores (and therefore concedes) that the complaint says only that the balance grew over an unspecified period of time; it does not say anything about the interest rate charged on the loan and thus cannot establish that Lexin engaged in usury. (Mot. 16-17.) Moreover, Plaintiff acknowledges that the second complaint concerns a loan that was allegedly made before the Class Period (Opp. 20), which is insufficient to show that Lexin engaged in usury at the time of any of its alleged statements. *See Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (requiring plaintiff to allege "contemporaneous statements or conditions that demonstrate" the falsity of statements when made); *In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019) (dismissing securities complaint alleging defendant engaged in improper lending practices where witness "provided information concerning an earlier period"). Plaintiff's speculation that "collection efforts would have taken place later" and that "as of the date of the complaint, the borrower still had a current balance payable" (Opp. 20) is unsupported by facts alleged in the AC. Likewise, Plaintiff's assertion that the complainant has personal knowledge because his relative took the loan out in the complainant's name does not establish that the complainant *personally knew* that his relative promised to pay the loan back or only paid in installments or minimum payments, as the complainant asserted. (AC ¶ 42.)

PAGE 9 -     REPLY IN SUPPORT OF MOTION TO DISMISS

Concerning the third and fourth complaints, Plaintiff argues that the complainants described the collection telephone calls as "aggressive" or made to "many people in my contact list" or "family." (Opp. 20.) But such assertions illustrate precisely why the complaints are too conclusory and insufficient to show that any of Lexin's statements were misleading. The third complaint lacks any details about what made the calls "aggressive[]"—tone, frequency, content, or something else. It lacks details about who was on this "contact list" or how the "outsourced loan collection company" came to possess it, how many calls were made, to how many people, when, or what was said. (AC ¶ 43.) As to the fourth complaint, it describes only two calls to the borrower's parents and states only that learning "about the loan issue" somehow caused unspecified "health injuries" to the borrower's mother. (*Id.*) Lexin disclosed that it uses phone calls as a collection method (Ex. 3 at 25; Ex. 4 at 23; Ex. 5 at 21; Ex. 6 at 28), and Plaintiff alleges no facts demonstrating that these calls were anything other than precisely the debt collection practices that Lexin disclosed in its public filings. *See Wilson v. MicroFinancial, Inc.*, 2006 WL 1650971, at *6 (D. Mass. June 13, 2006) (dismissing claim when plaintiff failed to allege "high pressure collection tactics," which were disclosed by company, were "improper" or "unlawful").

### (b)    Lexin's Statements Were Not Misleading

Notwithstanding Plaintiff's failure to demonstrate that Lexin engaged in usury or harassment, Plaintiff argues that, by speaking about compliance or certain drivers of its growth, Lexin triggered a duty to disclose that the alleged usurious lending and harassment of borrowers raised its regulatory risk profile and contributed to its growth. (Opp. 18, 23-24 n.8.) Plaintiff's argument is wrong.

***Compliance statements.*** As shown in the Motion—and as Plaintiff does not dispute— Lexin's statements can be misleading for omitting information only if they affirmatively create the "impression of a state of affairs that differs in a material way from the one that actually exists."

PAGE 10 -    REPLY IN SUPPORT OF MOTION TO DISMISS

*Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiff cannot allege that any of Lexin's statements about compliance were misleading because, even assuming that Plaintiff had adequately alleged Lexin engaged in usury or violated the law with its debt collection practices (and it has not), none of Lexin's statements stated or implied that no regulatory violations ever had occurred. *See Ikeda v. Baidu, Inc.*, 2021 WL 1299046, at *13 (N.D. Cal. Apr. 7, 2021) (dismissing claim when none of the statements at issue "gave the impression that Baidu was in perfect compliance with Chinese regulations").[5]

Far from representing it had perfect compliance, Lexin explicitly and repeatedly disclosed that, while it was taking steps to ensure compliance with regulations, regulatory compliance was an ongoing challenge. *See Baidu*, 2021 WL 1299046, at *13 (dismissing claim when company "made other statements about its regulatory compliance that disclosed the risks that Baidu might fall out of compliance at any time"); *see also Asay v. Pinduoduo, Inc.*, 2020 WL 1530745, at *7 (S.D.N.Y. Mar. 30, 2020) (dismissing claim where "the Company's disclosures depicted its anti-counterfeiting efforts as an ongoing battle" and "warned that its anti-counterfeiting measures 'may not always be successful'"). In particular, Lexin warned that its "current fee level" could be "deemed to be excessive" or "constitute[] usurious loans under any existing or future relevant PRC laws, regulations or rules." (Ex. 3 at 29.) It also warned:

> [T]he current regulatory regime for debt collection in China remains unclear. Although we aim to ensure compliance of our collection efforts with the relevant laws and regulations and we have established strict internal policies to prohibit our collections team

---

[5] Indeed, the only specific statements to which the Opposition points (Opp. 18 n.5)—broad references to "consistent regulatory compliance" (AC ¶ 68); "ensuring compliance with all applicable laws and regulations" (AC ¶ 59); or "being more compliant" with P2P lending regulations (AC ¶ 81)—are puffery. *See, e.g.*, *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 825-26 (N.D. Cal. 2019) (stating "[w]e've worked hard to make sure that we comply" was puffery); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 804 (N.D. Cal. 2019) ("[o]ur long-term success is dependent on . . . a relentless focus on compliance, security and risk management" was puffery); *Karam v. Cortinthian Colls, Inc.*, 2012 WL 8499135, at *10 (C.D. Cal. Aug. 20, 2012) ("[c]ompliance for the organization has really been job one for us" was puffery).

PAGE 11 -    REPLY IN SUPPORT OF MOTION TO DISMISS

> from engaging in aggressive practices, we cannot assure you that your collection [team] will not engage in any misconduct as part of their collection efforts.

(Ex. 3 at 25.) With disclosures likes these, Lexin's general statements about compliance could not have given the impression that no compliance issues could exist.

*Drivers of growth statements***.** Plaintiff also fails to show that any of Lexin's statements about the general drivers of its growth were misleading for failing to disclose that the alleged usury or harassment of borrowers contributed to its growth. (Mot. 18.) Plaintiff does not allege that purported usury or harassment of borrowers did (or could) contribute to growth in the first place, which is reason alone to reject Plaintiff's claim. *See Ronconi*, 253 F.3d at 434 (rejecting allegations that undisclosed "problems" and "difficulties" made statements about earnings growth false when plaintiff failed to allege why the problems and difficulties decreased growth); *Karam*, 2012 WL 8499135, at *8 (rejecting claim that failure to disclose alleged misconduct contributed to growth when plaintiff did not allege the misconduct "contributed materially to growth").

Moreover, in *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *5 (S.D.N.Y. July 16, 2020), the court dismissed a claim that "disclosures explaining the drivers of revenues and profits from mobile apps" were misleading for failing to disclose a "click injection" scheme. This was because the company's disclosures "did not, explicitly or implicitly, rule out other factors playing a role in generating revenue." *Id.*; *see also Karam*, 2012 WL 8499135, at *8 (statements that did not "attribute Corinthian's growth *solely* to legitimate practices" were not misleading when plaintiff failed to "allege specific facts showing that Corinthian's growth was *so* dependent on the alleged misconduct that the failure to mention that conduct when attributing growth to a legitimate factor" would create a misimpression (emphasis in original)); *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *17 (S.D.N.Y. Mar. 30, 2021) (dismissing claims that statements attributing "overall financial performance to factors like organic growth,

PAGE 12 -     REPLY IN SUPPORT OF MOTION TO DISMISS

acquisitions, and macroeconomic trends" were misleading for failing to disclose payments made to foreign officials because the company's statements were "too generalized" and "not sufficiently connected" to payments). Likewise here, while Lexin's statements identified "core strengths" and drivers of growth, Plaintiff does not allege he ruled out other factors playing a role in generating growth (*see* AC ¶¶ 70, 81, 88, 100), nor does he allege facts showing that usury or harassment even generated growth. Therefore, Lexin's statements did not create a misleading impression.

The authorities Plaintiff cites in the Opposition are not to the contrary. (Opp. 23 n.8.) In *Schueneman v. Arena Pharmaceuticals, Inc.*, 840 F.3d 698, 700-02 (9th Cir. 2016), a drug company stated "***all*** the animal studies" supported FDA approval for its drug, when the company knew that in one study, about which the FDA had expressed concern, rats developed cancer. The court reasoned: "once defendants chose to tout [the drug's likely approval by referencing allegedly positive animal and preclinical studies], they were bound to do so in a manner that wouldn't mislead investors as to potentially negative information within their possession." *Id.* at 707-08. Thus, *Schueneman* was about an affirmative, categorical statement that was false and known to be false; it does not support the proposition that once a company speaks about a general topic—like drivers of growth—it becomes misleading so long as a plaintiff is able to point to some omitted negative information on that topic. That is not the law. *See Brody*, 280 F.3d at 1006 (rejecting a "completeness rule" because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not").

The second case Plaintiff cites, *In re Marsh & McLennan Cos. Securities Litigation*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006), also does not stand for the proposition Plaintiff claims. In *Marsh*, the court held that allegations that a corporation's growth was achieved through alleged improper means was ***not*** sufficient for Section 10(b) liability. *See id.* at 469 ("Absent an allegation that

PAGE 13 -    REPLY IN SUPPORT OF MOTION TO DISMISS

[defendant company] reported income that it did not actually receive, the allegation that a corporation properly reported income that is alleged to have been, in part, improperly obtained is insufficient to impose Section 10(b) liability.").

### (c)    Lexin Disclosed Risks From Interest Rates And Debt Collection

Plaintiff's allegation that Lexin failed to disclose that "usurious lending and harassment of borrowers' friends and family for collection purposes . . . raised a risk of regulatory scrutiny and/or reputational damage—including negative publicity and customer complaints"—also fails because Lexin warned of these precise risks. (*See* AC ¶ 67; *see also* Opp. 19 n.6.) As shown above, Part II.A.1(b), and in the Motion, Lexin consistently warned that risks related to regulations, interest rates, and collection practices might negatively impact Lexin's business, financial performance, and reputation. (Mot. 19-20.) These disclosures decisively foreclose Plaintiff's argument. *See Qudian*, 2019 WL 4735376, at *7 (rejecting challenge to disclosures about interest rates and collection practices when company warned of risks arising from these issues).

Plaintiff's effort to distinguish *Qudian*, 2019 WL 4735376, at *7, fails. Plaintiff argues that *Qudian* is different because the risk disclosures there "explicitly warned investors that the company could *not* assure investors that 'personnel will not engage in any misconduct as part of their collection efforts.'" (Opp. 23 (emphasis in original).) However, contrary to Plaintiff's assertion, Lexin included the exact same disclosure here. (*See* Ex. 3 at 25 (stating "we cannot assure that our collection activities [sic] will not engage in any misconduct as part of their collection efforts").) Similarly, just as the risk disclosure in *Qudian* "stated that a 'financing service fee' it charged could be seen as interest and thus raise the interest rate above the '36% upper limit'" (Opp. 23), Lexin disclosed the exact same risks. (*See* Ex. 3 at 29 (stating "if our current fee level is deemed to be excessive or constitutes usurious loans under any existing or future relevant PRC

PAGE 14 -    REPLY IN SUPPORT OF MOTION TO DISMISS

laws, regulations, and rules, we may face" various penalties); Ex. 4 at 26 (same); Ex. 5 at 25 (same).) *Qudian* is thus on all fours.

Plaintiff's argument that Lexin's disclosures were inadequate because the risks Lexin "purportedly warned *might* occur in the future *had already* materialized" is baseless. (Opp. 23 (emphasis in original).) For one thing, the AC alleges that, by not disclosing alleged usury and harassment, Lexin's statements gave the impression Lexin did not face regulatory and reputational risks. (AC ¶ 67.) Lexin's disclosures that it *did* face such risks doom that allegation, regardless of whether they are phrased as hypotheticals. *See In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at \*12 (N.D. Cal. Oct. 31, 2014) (concluding that once shareholders are on notice of risks, they "cannot be heard to complain that the risks were masked as mere contingencies").

Moreover, Plaintiff pleads nothing to show that any risks had materialized. The risks of which Lexin warned included (i) "users or regulatory authorities" viewing collection practices as "harassment, threats or other illegal conducts," resulting in "lawsuits initiated by the users or [being] prohibited by the regulatory authorities from using certain collection methods," "harm to our reputation and business," leading to a reduced "ability to collect payments from borrowers," a decrease in customers, or "fines and penalties imposed by the relevant regulatory authorities" (Ex. 3 at 25); and (ii) its "current fee level" being deemed "excessive," resulting in "regulatory warning, correction order, condemnation, fines and criminal liability" and being required to "reduce the fees and annual interest rate we charge to our users." (*Id.* at 29.) Plaintiff pleads no facts to show that any of these adverse events have occurred at all, let alone that they had occurred at the time of Lexin's statements. *See Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at \*7 (N.D. Cal. May 23, 2019) (concluding that disclosure about risks from data breaches and cyber-attacks was not misleading when plaintiff alleged only undisclosed "vulnerabilities," not data breaches or

PAGE 15 -    REPLY IN SUPPORT OF MOTION TO DISMISS

cyber-attacks or lawsuits resulting therefrom).[6]

Each of the cases Plaintiff cites is inapposite because each involved, not a claim of omitted risk, as Plaintiff alleges here, but alleged affirmative misstatements. (Opp. 23.) In *Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 483 (9th Cir. 2019), the defendant described its identify theft alerts as "real-time" when 70% were in fact sent a week late. The court concluded that risk warnings could not "counterbalance [the] misleading impression." *Id.* at 484; *see also Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) (alleged misstatements about amount of "backlog" not cured by risk disclosure that failed to alert investors that certain amounts included in backlog were uncollectible); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *10 (C.D. Cal. June 9, 2016) (risk disclosure itself alleged to be an actionable misstatement). Here, Plaintiff fails to state a claim, not because Lexin's risk warnings "counterbalanced" the misleading impression that Lexin's public disclosures created, but because there was no misleading impression in the first place, as Lexin disclosed the very risks that Plaintiff claims it hid.

### 2.    Plaintiff Does Not Allege Lexin Falsely Reported Its Growth Rate

Plaintiff's argument that Lexin misstated "the actual rate of Lexin's growth" also fails. (Opp. 21.) As shown in the Motion, Plaintiff pleads no facts to show that Lexin's reported rates of growth were false or that Lexin did not in fact have the number of users or rate of growth in users it reported, let alone what the figures actually were. (Mot. 10-13.) Indeed, Plaintiff does not dispute

---

[6] *See also Nurlybayev v. ZTO Express (Cayman) Inc.*, 2021 WL 1226865, at *7 (S.D.N.Y. Mar. 31, 2021) (concluding risk warning is misleading only if "adverse effects at issue had in fact been realized"); *Marcu*, 2020 WL 4016645, at *6 (rejecting claim that risk disclosures were misleading when the warned-of risk "had not yet materialized; instead, it remained—indeed, still remains— hypothetical"); *Baker v. SeaWorld Entm't, Inc.*, 2016 WL 2993481, at *12 (S.D. Cal. Mar. 31, 2016) (risk disclosure regarding park attendance was not misleading where plaintiffs "fail[ed] to plausibly allege Defendants knew that [the warned-of risks] were having any impact on attendance").

PAGE 16 -    REPLY IN SUPPORT OF MOTION TO DISMISS

the absence of such allegations in the Complaint. His sole answer is that he is not required to plead such facts, and Lexin is incorrectly "seeking to hold Plaintiff to a standard beyond what the securities laws require at the pleading stage." (Opp. 21.) But Plaintiff's position is squarely foreclosed by settled Ninth Circuit authority. *See Ronconi*, 253 F.3d at 431 (to allege that sales growth was not accelerating, court required plaintiff to "describe, chart or graph what sales actually did"); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086-87 (9th Cir. 2002) (rejecting claim where "the complaint [gave] no indication of . . . what the actual length of the cycle was at the time of the statement" to support the allegation that the sales cycles were "lengthening substantially").

Plaintiff argues that "[w]eb analytics tracked on the Baidu index" for Fenqile shows that "web traffic to Lexin's key consumer lending product Fenqile remained relatively flat." (Opp. 21.) Neither the AC nor the Opposition explains what "web analytics," "web traffic," or website Plaintiff has in mind. Plaintiff argues that "Baidu Analytics . . . provides statistics about a website's traffic, conversions, on-page activity and visitor demographics" (*id.*), but no information about what the "Baidu Analytics" or "statistics" purportedly show is alleged in the AC (or referenced in the Opposition) regarding any Lexin-related website, let alone statistics that "demonstrate with near certainty that Lexin could not have expanded its user base," as Plaintiff argues. (*Id.*) Plaintiff alleges no supporting facts that "Baidu Analytics" reflects information about the trajectory of Lexin's user base. *See Karam*, 2012 WL 8499135, at *8 (rejecting claim that high drop-out rate meant the for-profit college enrolled unqualified students because students drop out for reasons unrelated to their qualifications and thus "these statistics do not help Plaintiffs establish falsity").

Instead, the AC relies entirely on a graph that Plaintiff claims shows the "Baidu index for Fenqile." (Opp. 7; AC ¶ 44.) Because Plaintiff simply lifted this graph and his allegations concerning this graph directly from the Grizzly Report, Plaintiff is unable to provide any

PAGE 17 -      REPLY IN SUPPORT OF MOTION TO DISMISS

explanation for the graph beyond the ambiguous description in the Grizzly Report. (*Compare* AC ¶ 44 *with* Ex. 1 at 25.)[7] Thus, rather than explaining in detail what the graph depicts, Plaintiff argues that regardless of whether the chart is even legible, "there is no ambiguity as to the directionality or lack of movement in the graph line." (Opp. 21.) But the "directionality or lack of movement" in the line is meaningless without knowing what either axis of the graph represents.[8]

Plaintiff's assertion that the chart depicts some unspecified metric for "web traffic" to or about an unidentified website does nothing to call into question Lexin's statements. Plaintiff's position appears to be that, because—according to Plaintiff's interpretation of the graph—"web traffic remained flat, or even declined at points" (Opp. 21), Lexin's number of registered users necessarily "also remained flat or declined at points." Yet Plaintiff does not allege that Lexin inaccurately reported its finances during the same time period; in fact, Plaintiff admits Lexin experienced financial growth. (*See* Weinrib Decl. Ex. A at 89 (reporting growth in loan originations and outstanding balance); *id.* Ex. B at 90 (same); *id.* Ex. C at 99 (same).) Plaintiff offers no explanation for how Lexin could so consistently report growth in loan originations and

---

[7] While Plaintiff claims he "conducted [his] own investigation" (Opp. 22), the paragraphs of the AC Plaintiff cites all relate to Plaintiff's allegations about related-party transactions. (AC ¶¶ 35, 38, 40.) Plaintiff points to nothing in the AC showing he independently investigated the "Baidu index" graph he pasted into his AC. Nor does Plaintiff allege any explanatory or corroborative facts. Given the lack of specificity in the Grizzly Report concerning the origin and meaning of the "Baidu index" graph, these allegations fail to state a claim. *See Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 802 (S.D.N.Y. 2020) (plaintiff's recapitulation of a short-seller report without "independent corroborative facts" was insufficient for pleading purposes). The cases Plaintiff cites did not involve a plaintiff who relied exclusively on uncorroborated, ambiguous claims from a short-seller. *In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *7 (C.D. Cal. Sept. 6, 2017) (blogger "released a list of all the documents that were the sources of the blog post"); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012) (short seller relied on a report with factual support and complaint included additional factual allegations).

[8] Plaintiff alleges nothing contrary to, and gives the Court no reason to doubt the accuracy of, Wikipedia's description of Baidu Index as a "keyword research tool" that allows users to "look up the search volume and trend for certain hot keywords and phrases." (Mot. 12 n.4; Opp. 21.) Thus, it stands to reason the graph reflects some statistic related to the use of "Fenqile" as a search term, although the Court need not reach this conclusion given Plaintiff's failure to allege what the graph shows.

PAGE 18 -    REPLY IN SUPPORT OF MOTION TO DISMISS

outstanding balances if in fact its number of users did not grow at all.

Indeed, Plaintiff offers neither facts nor explanation for why "web traffic"—whatever Plaintiff intends that to mean—necessarily correlates to or reflects the number of Lexin registered users or growth in Lexin users. As explained in Lexin's Motion—and ignored in the Opposition—Lexin offers its services mainly through its mobile applications that are available for download from app stores operated by third parties. (Mot. 12.) Thus, users can download, register with, and use Lexin's mobile applications without ever searching the word "Fenqile" on Baidu.com or visiting any Lexin website. Plaintiff argues nothing to the contrary. Plaintiff's allegations about the "Baidu index" thus do nothing to demonstrate Lexin's statements were false. *See Vantive*, 283 F.3d at 1087 (holding falsity insufficiently pleaded when complaint did not "indicate how [the alleged] facts would necessarily show that [the company's] statement . . . was misleading" when made).

### 3. Plaintiff Does Not Allege Any Misstatement Regarding Related-Party Transactions

The Opposition argues that two purported transactions allegedly should have been disclosed as related-party transactions under Item 404(a) of SEC Regulation S-K and GAAP. (Opp. 24–25.) However, Plaintiff cannot establish any claim under Item 404(a) because Plaintiff does not plead that Lexin participated in any of these transactions, the transactions involved an amount exceeding $120,000, or that any related person had "a direct or indirect material interest" in the transactions, all of which are independently necessary to state a claim, 17 C.F.R. § 229.404(a). Plaintiff also has not pleaded that either transaction was material for purposes of GAAP.

### (a) Plaintiff Fails To Plead A Related-Party Transaction

***Beihai Jiguang.*** Contrary to the Opposition, the AC alleges no facts supporting that Lexin transacted with Beihai Jiguang Information Technology Co., Ltd. ("Beihai Jiguang"). (Opp. 24.) Plaintiff contends it is "reasonable" to infer Beihai Jiguang's 2018 revenue is derived from Lexin

PAGE 19 -    REPLY IN SUPPORT OF MOTION TO DISMISS

because (i) two non-executive Lexin employees—a "Vice President" and "legal representative for numerous [Fenqile] branch offices" (AC ¶ 37)—own 75% of Beihai Jiguang's parent, Beihai Caidan; (ii) Beihai Caidan and Fenqile "jointly own" an insurance company, split 8% / 92%; and (iii) "another Beihai Caidan subsidiary, is listed as the copyright owner for the website" of a Lexin subsidiary. (Opp. 24 n.9.) Even assuming these connections with Beihai Jiguang's alleged parent—not even Beihai Jiguang itself—make Beihai Jiguang a "related party," Plaintiff does not allege that Lexin actually engaged Beihai Jiguang to perform collection services in 2018, or at all. Courts dismiss on this basis alone. *See Reed v. Amira Nature Foods Ltd.*, 2016 WL 6571281, at \*8 (C.D. Cal. July 18, 2016) (dismissing claim that plaintiff "failed to disclose related party transactions" with entities with which it shared addresses, directors, and similar business, when plaintiff did not identify "any purchases, sales, or any other transaction" with those entities).

Plaintiff is also unable to show that any transaction exceeded Item 404's $120,000 threshold. Plaintiff speculates that "[e]ven if Lexin only accounted for 4% of Beihai Jiguang's revenue from collection services, that still meets Item 404's $120,000 threshold." (Opp. 24.) However, Plaintiff pleads no facts to support an inference that 4% of Beihai Jiguang's revenue from collection services—or any amount at all—was attributable to Lexin. *See In re Francesca's Holdings Corp. Sec. Litig.*, 2015 WL 1600464, at \*15 & n.8 (S.D.N.Y. Mar. 31, 2015) (finding that "the fact that [a related party] imported $500,000 worth of merchandise" did not support the inference that $120,000 worth of merchandise was supplied to defendant).

***Ji'an Microcredit***. Plaintiff also argues that Lexin was required to disclose as a related-party transaction that "Jiangxi Leyu Rong Technology Co., Ltd. [("Leyu Rong")], a Lexin subsidiary, became a 34% shareholder in Ji'an Microcredit, which until then had been 100% owned by another Lexin subsidiary." (Opp. 24-25.) This argument also fails for the simple reason that the

PAGE 20 -     REPLY IN SUPPORT OF MOTION TO DISMISS

AC includes no details about this transaction at all. Plaintiff's Opposition ignores (and therefore concedes) that Plaintiff does not allege that Lexin participated in this transaction, does not allege the transaction exceeded $120,000, and does not identify any officer, director, 5% shareholder, or immediate family member thereof, who had a "direct or indirect material interest" in this transaction. *See* 17 C.F.R. § 229.404(a); *id.* at Instruction 1. *See also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver.") Each of these failings is fatal to Plaintiff's claim. *See, e.g.*, *In re Sandridge Energy, Inc.*, 2013 WL 12094274, at *10 (W.D. Okla. Sept. 11, 2013) (dismissing when plaintiff failed to allege that company was a "direct participant" or "party to the [relevant] transaction[s]"); *In re Jiangbo Pharm., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1259 (S.D. Fla. 2012) (dismissing when plaintiff failed to allege that company was a party to the transaction); *Francesca's*, 2015 WL 1600464, at *15 (dismissing when plaintiff failed to allege the transaction exceeded $120,000).[9]

### (b)    Plaintiff Fails To Allege Any Violation Of GAAP

Plaintiff's Opposition does not dispute that, to allege a GAAP violation based on a failure to disclose a related-party transaction, the plaintiff must allege (1) particularized facts showing a transaction between the company and a related party; and (2) that the transaction was material. *See ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 202 & n.8 (2d Cir. 2009). As shown in the Motion, Plaintiff also fails to plead a GAAP violation, not only

---

[9] Plaintiff's claim that a family member of Mr. Xiao had a "material interest" in this transaction because the family member owns 80% of a company sharing an address with Leyu Rong also fails. (Opp. 25.) The fact that two companies share a business address and certain contact information does not establish that they are in fact the same company or have common ownership or control. *See Sandridge*, 2013 WL 12094274, at *10 (allegation that defendant shared an address with participants to transaction "fail[s] to establish that [defendant] itself was a party to any undisclosed transaction").

PAGE 21 -    REPLY IN SUPPORT OF MOTION TO DISMISS

because he does not allege a related-party transaction occurred, *see supra* Part II.A.3(a), but also because he fails to plead any transaction was material. (Mot. 23.)

Plaintiff's only response is to argue that the Court cannot decide materiality on a motion to dismiss. (Opp. 25 n.11.) Plaintiff misstates the law. Although courts generally refrain from resolving questions of materiality on a motion to dismiss, plaintiff bears the burden of pleading facts that the alleged related-party transactions pertained to more than "a minute fraction of assets" on the company's balance sheet. *See ECA*, 553 F.3d at 202 (dismissing claim because plaintiff failed to allege related-party transactions were material); *see also In re China Valves Tech. Sec. Litig.*, 2012 WL 4039852, at *6-7 (S.D.N.Y. Sept. 12, 2012) (dismissing related-party claims when transactions were "quantitatively small" and plaintiff failed "to allege that they were material"); *Francesca's*, 2015 WL 1600464, at *16 (dismissing related-party claim when transactions represented, at most, $250,000 out of $79 million in revenue). Plaintiff fails to meet this burden. Here, to the extent the AC even alleges a transaction, it includes no details about the monetary value of any transaction, let alone details sufficient to infer the transaction involved more than a "minute fraction of [Lexin's] assets." *ECA*, 553 F.3d at 202. Contrary to the Opposition, the Court, in declining to accept as true Plaintiff's legal conclusion, would not be resolving a disputed question of materiality. Instead, it would simply be holding Plaintiff to his pleading burden. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

### 4.    Plaintiff Fails To Allege A Misstatement Regarding P2P Loans

Plaintiff challenges as false and misleading Lexin's statements that it ceased "facilitating new loans with funding from individual investors on Juzi Licai platform since November 2019" (AC ¶¶ 47, 93), and that it had become "more compliant" with P2P regulations. (*Id.* ¶ 81.) As made clear in the Motion, such challenge fails because Plaintiff does not allege Lexin facilitated new

PAGE 22 -    REPLY IN SUPPORT OF MOTION TO DISMISS

loans from individual investors after November 2019. (Mot. 25-26.) The Opposition does not deny that the only fact Plaintiff attempts to plead in support of this claim is the screenshot Plaintiff pasted into his AC from the Grizzly Report. This screenshot is insufficient, not because, as the Opposition argues, its "quality" is poor (Opp. 25), but because it lacks any factual content. The screenshot does not self-evidently show, and the AC does not allege, an individual obtaining a new loan from another individual on the Juzi Licai platform. (Mot. 26.)

Plaintiff argues that the Grizzly Report "explains" that "on July 8, 2020, an individual with the last name Rong borrowed RMB 90,000 via the Juzi Licai platform." (Opp. 26.) Even if the Court takes Grizzly's word for it, Grizzly does not claim personal knowledge of this transaction; Grizzly merely claims it looked at "product offerings" listed on the Juzi Licai app and drew conclusions from what it claimed it saw. (Ex. 1 at 14.) In any event, Grizzly does not claim that this was a *new* loan to the borrower or that the investor with whom Rong was matched was an individual. (*Id.*) Nor does it claim that any loan actually went through. Because Plaintiff fails to allege these basic facts, he cannot show the falsity of Lexin's statement that it had "ceased facilitating new loans with funding from individual investors on Juzi Licai platform." (AC ¶ 47.)

### 5.    Plaintiff Fails To Allege A Misstatement Regarding Delinquency Rates

Plaintiff also fails to properly allege that, after the onset of the COVID-19 pandemic, Lexin understated its delinquency rates. (Opp. 26.) Plaintiff does not plead facts, as he must, showing how or to what extent Lexin understated its rates. *See Vantive*, 283 F.3d at 1091 (dismissing claim when plaintiff failed to allege amount by which revenues were improperly recognized); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 389-90 (E.D. Pa. 2005) (dismissing claim when plaintiff failed to allege amount by which delinquencies were understated); (Mot. 23-25.) Instead, Plaintiff argues that Lexin's delinquency rates *must have* been understated by some

PAGE 23 -    REPLY IN SUPPORT OF MOTION TO DISMISS

amount because they did not "skyrocket" like "traditional banks," and Lexin's borrowers "defaulted at significantly higher rates." (Opp. 26.) This argument fails on multiple fronts.

First, Plaintiff provides no facts or explanation as to how, in Plaintiff's view, Lexin's loans *should have* performed compared to those of "traditional banks." Plaintiff alleges that "some banks" experienced "default rates" "as high as 4%" by end of March 2020. (AC ¶ 48.) During the same period, Plaintiff alleges that Lexin reported "90-day delinquencies reached 2.57%" and "seven-day delinquency rate was 3.7%." (AC ¶ 98.)[10] Plaintiff does not explain why he views these rates as suspiciously low compared to "traditional banks," let alone why they were so low they *must* be false. *See NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*, 2012 WL 3191860, at *13 (S.D.N.Y. 2012) (dismissing claim that write-downs were false because they "were substantially smaller than the write-downs taken by industry peers with 'similar' portfolios").[11]

Second, Plaintiff's argument that Lexin offered (fully disclosed) repayment options such as "installment on installment" and "minimum payments" to help borrowers avoid delinquency fails to explain why the use of such repayment options rendered false Lexin's reported delinquency rates. *See Am. Bus.*, 413 F. Supp. at 384 (dismissing claims of understated delinquency rates when complaint lacked "specific allegations as to the frequency with which [the specific] techniques were used to avoid delinquent loans or specific allegations as to the amount by which the reported delinquency rate was understated at any point in time"). Plaintiff's argument that "those features

---

[10] Plaintiff also challenges Lexin's statements about its delinquency rates in June and August 2020 (AC ¶¶ 98, 100-101), but Plaintiff alleges nothing about how "traditional banks" performed during those times. (*See* AC ¶ 48 (quoting March 29, 2020 article); ¶ 49 (quoting March 22, 2020 article).)

[11] Plaintiff's argument that the "Supreme Court requires" the Court to "draw[] all inferences in Plaintiff's favor" (Opp. 26) misses the point. The Supreme Court requires the Court to draw reasonable inferences in a plaintiff's favor when the plaintiff has pleaded facts that are more than "merely consistent with" a defendant's liability and raise a claim with "facial plausibility." *Iqbal*, 556 U.S. at 678. Plaintiff here has not alleged such facts to enable the court to draw such reasonable inferences in his favor. *See Metzler*, 540 F.3d at 1070.

PAGE 24 -    REPLY IN SUPPORT OF MOTION TO DISMISS

had never been used for loans in default until the pandemic" (Opp. 26) is not only irrelevant—Lexin disclosed that these options could "affect [its] loan delinquencies and charge-offs" (Ex. 3 at 15)—but it is also unsupported by the allegations. (AC ¶ 106.) The only basis for this argument is the Grizzly Report's identical assertion, based on unidentified "Lexin users." (*Id.*) The Court need not credit assertions from anonymous "users" who provide no basis for their claims. *See Diaz v. N. Dynasty Minerals, Ltd.*, 2018 WL 5099749, at *7 (C.D. Cal. Apr. 30, 2018) (rejecting allegations that depended exclusively on short-seller report that cited unidentified witnesses).

### B.    Plaintiff Fails To Allege A Strong Inference Of Scienter

Plaintiff seeks to establish scienter with four arguments: (i) the Individual Defendants' positions and access to information (*i.e.*, the core operations theory); (ii) Lexin's statements; (iii) Lexin's alleged GAAP violations; and (iv) Individual Defendants' purported "motive and opportunity." (Opp. 27-30.) These allegations fall far short of the stringent requirements for pleading scienter.

### 1.    Plaintiff's Core Operations Theory And Individual Defendants' Positions Fail To Plead Scienter[12]

Plaintiff's attempt to raise an inference of scienter merely based on Defendants Xiao's and Zeng's positions as "leaders of the Company" fails. (Opp. 27.) Courts reject attempts to raise scienter based on the defendants' management positions alone, which amount to nothing more than a suggestion that the defendants "must have known" the falsity of their statements. *See Metzler*, 540 F.3d at 1068 ("corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter"); *Zucco*, 552 F.3d at 1001 (rejecting "must have known" allegations); *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 649 (S.D.N.Y.

---

[12] Although the Opposition treats the "core operations" and Individual Defendants' positions separately (Opp. 27), the arguments are related, and therefore, Lexin combines its discussion of both arguments here.

PAGE 25 -    REPLY IN SUPPORT OF MOTION TO DISMISS

2007) (cited in Opposition and noting, "scienter cannot be inferred solely from the fact" of defendants' "executive managerial position"). Rather, scienter can be inferred under the "core operations" doctrine only under two narrow circumstances: (i) "where [the allegations] are particular and suggest that defendants had actual access to the disputed information"; or (ii) "in rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Intuitive*, 759 F.3d at 1062; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063-64 (9th Cir. 2014) (core operations requires "specific information conveyed to management and related to the fraud").

Plaintiff's only argument in support of the core operations inference is that because "Lexin's business is consumer finance," the "most logical inference is that Defendants focused on [delinquencies and compliance] and would have known (or recklessly disregarded) that they did not accurately report" on these things. (Opp. 27.) But that Individual Defendants are generally "focused on" "delinquency rates" or "regulatory compliance" does not mean they became aware of information *contradicting* their statements. *See Intuitive*, 759 F.3d at 1062-63 ("mere inference of [the defendants'] knowledge of all core operations" did not support an inference of scienter). Plaintiff gives the Court no reason to conclude that, as part of "focus[ing] on" delinquency rates or compliance, any Individual Defendant ever became aware of contradictory information. Plaintiff points to no report, meeting, or any other facts. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *21 (N.D. Cal. Dec. 17, 2019) (dismissing claim that defendants would have known about everything related to core operations).

Nor does Plaintiff attempt to identify any facts that are so "prominent," it would be "absurd to suggest that top management was unaware of them." *Zucco*, 552 F.3d at 1001. The anonymous internet complaints, "Baidu Index" graph, related-party references, and individual transactions on

PAGE 26 -     REPLY IN SUPPORT OF MOTION TO DISMISS

Lexin's apps—the information Plaintiff claims contradicted Lexin's statements (AC ¶¶ 42-44, 46-47)—certainly do not fit the bill, and Plaintiff does not allege that they do. Plaintiff's argument that these allegations nevertheless "contribute[] to the overall inference of scienter" (Opp. 28) is wrong as a matter of law. *See In re Diebold Nixdorf, Inc. Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021) (insufficient allegations about defendants' responsibilities and core operations raised no inference of scienter because "zero plus zero . . . cannot equal one").

### 2.     Individual Defendants' Statements Raise No Inference Of Scienter

Plaintiff also argues that when "Defendants spoke about Lexin's growth, collection practices, regulatory compliance, its P2P business, delinquency rates, and related party issues," they put themselves forward as having knowledge on this topic. (Opp. 28.) But just because a defendant knows about a broad topic does not mean that it has information *contradicting* its statements on that topic. *See Intuitive*, 759 F.3d at 1062-63 (affirming dismissal for failure to allege defendants had information contradicting their statements). A contrary conclusion—that merely making a statement was sufficient to infer knowledge of its falsity—would effectively read the PSLRA's stringent scienter standard out of the statute. *See Zucco*, 552 F.3d at 1001 ("reporting false information" indicates scienter only "where the falsity is patently obvious").

Similarly, Plaintiff cites no authority for his argument that a defendant is *per se* "reckless" for speaking on a topic while *not* knowing information that contradicts its statements. (Opp. 28.) This argument, too, is contrary to law. *See NVIDIA*, 768 F.3d at 1053 (holding that for "recklessness" to constitute scienter, a plaintiff must allege a degree of "intentional or conscious misconduct").[13]

---

[13] The decisions cited in the Opposition (Opp. 28) are distinguishable. *See Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 422 (E.D. Pa. 2019) (defendants unequivocally denied any "anti-competitive conduct" when directly questioned, while knowing such conduct was occurring); *Shenwick v.*
*(cont'd)*

PAGE 27 -     REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff also claims that Lexin had access to information contradicting its statements because Lexin disclosed that it monitored its number of active users, delinquencies, and compliance. (Opp. 28-29.) This theory relies on exhibits and quotations from Lexin's SEC filings that appear nowhere in the AC, which is reason enough to reject it. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (on a motion to dismiss, a "court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss"). In any event, Plaintiff does not allege (or explain in his Opposition) why Lexin's monitoring systems would have alerted Individual Defendants to information contradicting any of their statements, such as "Baidu Index" graphs, anonymous internet complaints, or individual transactions on Lexin's apps. *See Zucco*, 552 F.3d at 1000-01 (that defendant had access to accounting data did not mean he was in a position to know data were manipulated). Plaintiff alleges nothing about what facts those systems contained or revealed. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) ("[N]egative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA."); *Intuitive*, 759 F.3d at 1063 (affirming dismissal when complaint lacked "allegations linking specific reports and their contents to the executives").[14]

Plaintiff also argues that Individual Defendants' certifications concerning Lexin's

---

*Twitter, Inc.*, 282 F. Supp. 3d 1115, 1145 (N.D. Cal. 2017) (plaintiff alleged adverse trends in key metrics, of which it would be "absurd" to suggest defendants were not aware).

[14] The cases Plaintiff cites are distinguishable. *See Turocy v. El Pollo Loco Holdings, Inc.*, 2017 WL 3328543, at *16-17 (C.D. Cal. Aug. 4, 2017) (confidential witnesses attested that specific content of systems reviewed by defendants undermined their statements); *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1162-63 (N.D. Cal. 2015) (confidential witnesses attested to information provided to defendants at meetings); *In re Zynga Inc. Sec. Litig.*, 2015 WL 1382217, at *8 (N.D. Cal. Mar. 25, 2015) (confidential witnesses attested to declining "booking numbers" and that defendants reviewed those numbers).

*(cont'd)*

PAGE 28 -     REPLY IN SUPPORT OF MOTION TO DISMISS

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

disclosure controls contribute to an inference of scienter because they certified that information is "made known" to them. (Opp. 29.) The Ninth Circuit has squarely held otherwise. *See Zucco*, 552 F.3d at 1003-04 (concluding that boilerplate SOX certifications "add nothing substantial to the scienter calculus"). Plaintiff alleges no facts contradicting Individual Defendants' certifications.[15]

### 3.    Alleged GAAP Violations Do Not Demonstrate Scienter

Plaintiff's argument that "GAAP violations (*i.e.*, their failure to disclose related-party transactions) also contribute to an inference of scienter" similarly fails. (Opp. 30.) As set forth above, Plaintiff has failed to allege any GAAP violation. Nor has Plaintiff alleged there has been any restatement of financials or a finding by a regulatory body that there has been a GAAP violation. Moreover, even if Plaintiff had pleaded a GAAP violation, Plaintiff ignores (and therefore concedes) that "a failure to follow GAAP, without more, does not establish scienter." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016). Rather, a GAAP violation may contribute to scienter only if the plaintiff alleges "facts demonstrating that defendants knowingly and recklessly engaged in an improper accounting practice." *Id.*[16] Plaintiff alleges no facts to show that any Individual Defendant "knowingly and recklessly" failed to disclose any material, related-party transaction. Plaintiff alleges no facts about what any Individual Defendant knew about any alleged transaction at all, let alone about the need to disclose it under GAAP.

---

[15] The decision in *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1298 (N.D. Okla. 2010), which the Opposition cites (Opp. 29), cannot override binding Ninth Circuit precedent, but it is also distinguishable. In that case, the court concluded that defendants had signed false certifications that "contradicted facts that were then available to them." *SemGroup*, 729 F. Supp. 2d at 1298. Plaintiff identifies no such facts here.

[16] The cases Plaintiff cites, *Daou* and *McKesson*, do not hold otherwise. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1023 (9th Cir. 2005) (plaintiff pleaded particularized facts that defendants had "personally directed" systematic improper revenue recognition); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000) (concluding that GAAP violations supported scienter when supported by particularized allegations showing "widespread and significant inflation of revenue").

PAGE 29 -    REPLY IN SUPPORT OF MOTION TO DISMISS

### 4.     Plaintiff Fails To Allege Motive And Opportunity

As shown in Lexin's Motion, Plaintiff has failed to allege that any Individual Defendant had any motive to commit fraud because they did not sell stock at inflated prices. (Mot. 29-30.) Citing *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003), Plaintiff argues that this argument is a "red herring" because a plaintiff can establish scienter without alleging stock sales. (Opp. 30.) However, the plaintiff in *America West* included particularized allegations demonstrating the defendants' knowledge of aircraft maintenance and regulatory problems as well as "specific, particularized allegations" that the defendants were motivated to temporarily inflate the company's stock price in order to receive stock options. 320 F.3d at 942-944. Plaintiff here has made no such allegations. Thus, in conducting a holistic inquiry, and as the Ninth Circuit has held, Plaintiff's failure to allege stock sales is another fact that cuts *against* any inference of scienter. *See, e.g.*, *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012) (lack of stock sales "supports the opposite inference" of scienter); *Metzler*, 549 F.3d at 1067 (similar).

Plaintiff also argues that Defendants "directly benefitted from the fraud with exorbitant compensation that skyrocketed" between 2016 and 2019. (Opp. 30.) However, Plaintiff cannot merely assert Defendants' compensation increased while alleging no facts to show the increase was due to performance inflated by fraud. *See Zucco*, 552 F. 3d at 1005 (finding plaintiff failed to plead scienter because "the complaint fails to provide specifically, with comparisons to prior years bonuses, the correlation between [the defendants'] compensation and [the Company's] bottom line"). Plaintiff does nothing to explain how Defendants' compensation changed over time and how this reflects a motive to make misstatements. Further, executive compensation is often based partly on the executive's success in achieving corporate goals, and courts in the Ninth Circuit are not willing to "conclude that there is fraudulent intent merely because a defendant's compensation was

PAGE 30 -     REPLY IN SUPPORT OF MOTION TO DISMISS

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

based in part by such successes." *Rigel*, 697 F.3d at 884.

### 5.    Viewed Holistically, Plaintiff's Allegations Fail To Raise An Inference Of Scienter

As shown above and in the Motion, each of Plaintiff's scienter allegations individually is insufficient to raise any inference of scienter. Moreover, viewed holistically, Plaintiff's allegations do not establish an inference of scienter that is "cogent and at least as compelling as any opposing inference." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Rather, Plaintiff's hodge-podge of generic allegations never provides any specifics, as it must, that demonstrate cogently that any Individual Defendant had any *reason* to engage in fraud, or had any knowledge about four anonymous internet complaints, the Baidu index, purported related-party transactions, or particular loan transactions cherry-picked by the Grizzly Report. *See Webb*, 884 F.3d at 855-56 (non-particularized allegations of confidential witness statements, motive, GAAP violations, SOX certifications, and "core operations inference" did not raise a strong inference of scienter). Rather the most plausible inference is that this is an instance of opportunistic pleading stemming from a self-serving short-seller with a motive to fabricate a case for fraud in order to artificially drive down the Company's stock price so the short-seller can profit from its short sales.

### C.    Plaintiff Fails To Plead Loss Causation

Plaintiff has failed to plead loss causation because his theory of loss causation—that an anonymous, disclaimer-riddled short-seller report somehow "revealed" a fraud to the market—has been specifically rejected by the Ninth Circuit. *See BofI*, 977 F.3d at 797.

Plaintiff argues that *BofI* recognized that short-seller reports, even if based on publicly-available information, may disclose new analysis to the market. (Opp. 31-32.) Plaintiff argues that the Grizzly Report revealed new analysis because the public could not have conducted the same investigation "without great effort." (Opp. 32.) The Grizzly Report itself denied this

PAGE 31 -    REPLY IN SUPPORT OF MOTION TO DISMISS

characterization; it stated that its analysis was something "any person could have done if they had been interested in doing so." (Ex. 1 at 2.) Moreover, under *BofI*, a plaintiff must "allege particular facts plausibly suggesting that other market participants had not done the same analysis." *BofI*, 977 F.3d at 794. The AC contains no such facts, and the Court should reject Plaintiff's attempt to belatedly supply them in his Opposition. *See Schneider*, 151 F.3d at 1197 n.1.

Plaintiff's argument also misses the point. While *BofI* concluded that the "time and effort it took to compile" the information in the short-seller report made "it plausible that the [report] provided new information to the market," the court "nonetheless conclude[d] that" the plaintiff has not alleged that the reports "constituted corrective disclosures" because anonymous reports with multiple disclaimers and a motive to distort were not reliable. *BofI*, 977 F.3d at 797. The same is true here. The Grizzly Report is also from an anonymous short seller and is chock full of disclaimers.[17] (Mot. 32.)

Plaintiff argues that *BofI* addressed anonymous blog posts, whereas "the Report here was issued in Grizzly's name." (Opp. 32.) However, no individual was able or willing to put his or her name to the Grizzly Report. (*See* Ex. 1); *see also Mulquin*, 2020 WL 7773580, at *14-15 (concluding that report from "Plainview" was an anonymous report that did not constitute a corrective disclosure under *BofI*). Furthermore, although the Grizzly Report stated, "[t]o the best of our ability and belief, all information" and sources were "accurate and reliable" (Opp. 22), given the multiple other disclaimers in the report—including the disclaimer of making any "statements

---

[17] The disclaimers contained in the Grizzly Report note that they have a "direct or indirect short position in the stock . . . and therefore stand[] to realize significant gains in the event that the price of [Lexin's] stock declines." (Ex. 1 at 1-32.) Grizzly Research also disclosed on every page of the report, "The report and all statements contained herein are the opinions of Grizzly Research, and are not statements of fact." (*Id.*) Grizzly Research disclaimed making any "representation, express or implied, as to the accuracy, timeliness, or completeness of any such information," and warned "Use Grizzly Research's research at your own risk," warning readers to "do your own research." (*Id.* at 1-32.)

PAGE 32 -     REPLY IN SUPPORT OF MOTION TO DISMISS

of fact" or the "accuracy, timeliness, or completeness of any such information" (Ex. 1 at 2), Plaintiff has not explained why the market would give more credit to the Grizzly Report than it would the anonymous reports in *BofI*. *See BofI*, 977 F.3d at 797 (asking whether the "market reasonably perceived these posts as revealing the falsity" of company's statements). All of the cases cited in the Opposition crediting short-seller reports as corrective disclosures pre-dated *BofI* and did not consider whether the reports in question were, as here, anonymous and full of disclaimers.

Plaintiff also argues that the "magnitude of the decline" in Lexin's stock price supports that the Lexin report was a corrective disclosure. (Opp. 33.) However, in addition to the issues Plaintiff chose to highlight in the AC, the Grizzly Report purported to show that Lexin's "business model is deeply flawed" because, among other things, Lexin guaranteed certain loans while new regulations could force Lexin to lower interest rates, Lexin experienced pressures from the pandemic, Lexin restated its financials in the past, and certain shareholders were "selling off." (Ex. 1 at 1, 4-13, 21, 29.) Even if the market credited the Grizzly Report, the AC alleges no facts to support that the market was reacting to the particular issues raised in the AC—as opposed to the multiple other purported issues the Grizzly Report covered. *See Metzler*, 540 F.3d at 1065 (failure to plead loss causation where there was a "far more plausible reason for the resulting drop in [defendant's] stock price"); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015) (finding no loss causation when the complaint "fail[ed] to allege any facts to show that the price decline was caused, in whole or in part, by the cherry picked pieces of the report that it contends are true and not the allegations that Lead Plaintiff has cast aside"). Indeed, it is more likely that the Grizzly Report merely "caused a temporary price drop (which presumably resulted in a pecuniary gain for its author)." *Id*.

## III.    PLAINTIFF FAILS TO ALLEGE A 1933 ACT CLAIM

Plaintiff fails to state a claim under Section 11 because (i) Plaintiff does not allege an

PAGE 33 -      REPLY IN SUPPORT OF MOTION TO DISMISS

actionable misstatement in Lexin's Offering Materials; and (ii) Plaintiff's claim is barred by the statute of repose. Plaintiff's arguments to the contrary fail.

Plaintiff fails to allege a false or misleading statement in Lexin's Offering Materials for the reasons stated above. Moreover, as shown in the Motion, the AC fails to allege any undisclosed information, including any alleged related-party transaction, that was known to Lexin or took place before Lexin's December 21, 2017 IPO. (Mot. 35.) Contrary to Plaintiff's assertion that he alleged that related party "relationships existed at the time of the Offering Documents," Plaintiff in fact (i) admits that the "Ji'an Microcredit transaction" took place after the IPO (Opp. 34); (ii) claims that Beihai Jiguang "likely" provided Lexin services in 2018 (AC ¶ 107); and (iii) does not even claim a transaction with any other "related party," let alone a transaction before the IPO. Thus, Plaintiff fails to allege the Offering Documents omitted information at the time they became effective. *See Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).

Regardless, Plaintiff's claim is barred by the statute of repose because Plaintiff's January 19, 2021 AC was filed more than three years after Lexin's December 21, 2017 IPO. Plaintiff argues that his Section 11 claim is not barred because his counsel asserted Section 11 claims in a separate action in New Jersey on September 11, 2020, and Plaintiff filed his motion to be appointed Lead Plaintiff, which mentioned Section 11 claims, on November 9, 2020. (Opp. 34-35.) However, the statute of repose specifies that "[i]n no event shall any such *action* be *brought*" more than three years after the securities offering. 15 U.S.C. § 77m. An action is "brought" "when a particular complaint is filed in a particular court." *CalPERS*, 137 S. Ct. at 2054. "[I]t defies ordinary understanding to suggest that [a] filing—in a separate forum, on a separate date, by a separate named party—[is] the same 'action,' 'proceeding,' or 'suit.'" *See id.* (rejecting argument that shareholder's claim was timely because another shareholder asserted it in an earlier class action).

PAGE 34 -    REPLY IN SUPPORT OF MOTION TO DISMISS

Therefore, Plaintiff did not bring Section 11 claims until he filed his AC; a different plaintiff filing an action in a different federal court, or Plaintiff filing his Lead Plaintiff motion, does not count as Plaintiff bringing his Section 11 claims. *See In re Petrobas Sec. Litig.*, 116 F. Supp. 3d 368, 385 (S.D.N.Y. 2015) (concluding that "plaintiffs may not rely on the complaint filed by a different plaintiff . . . in one of the related cases" to avoid the statute of repose).[18]

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the AC in its entirety with prejudice.

Dated this 2nd day of July, 2021.

LANE POWELL PC

By:  */s/ Milo Petranovich*
　　Milo Petranovich, OSB No. 813376
　　601 S.W. Second Avenue, Suite 2100
　　Portland, Oregon 97204-3158
　　petranovichm@lanepowell.com
　　hawkesp@lanepowell.com
　　Tel: 503.778.2100

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

　　Peter B. Morrison (*admitted pro hac vice*)
　　Virginia F. Milstead (*admitted pro hac vice*)
　　Kasonni M. Scales (*admitted pro hac vice*)
　　300 South Grand Avenue, Suite 3400
　　Los Angeles, California 90071
　　peter.morrison@skadden.com
　　virginia.milstead@skadden.com
　　kasonni.scales@skadden.com
　　Tel: 213.687.5000

　　*Attorneys for Defendant LexinFintech Holdings Ltd.*

---

[18] The Motion mistakenly stated that the first time Section 11 claims were asserted in this action was in the AC. In fact, Section 11 claims were asserted in an amended complaint filed by the original named plaintiff on September 18, 2020. This, however, does not change the analysis because (1) the relation back doctrine does not apply to the statute of repose—a point Plaintiff does not dispute (Mot. 33-34); and (2) the September 18, 2020 complaint was filed by a different plaintiff, upon whose filing Plaintiff cannot rely. *See Petrobas*, 116 F. Supp. 3d at 385. Plaintiff argues nothing to the contrary.

PAGE 35 -    REPLY IN SUPPORT OF MOTION TO DISMISS